1

2

3

4

5

6

7

8                IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHARLOTTE A. BROWN,

11              Plaintiff,                    No. CIV S-09-3125 GGH

12       vs.

13
     MICHAEL J. ASTRUE,                      ORDER
14   Commissioner of
     Social Security,
15
                Defendant.
16   _____/

17              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying her applications for Supplemental Security Income ("SSI")

19   and Disability Insurance Benefits ("DIB") under Titles XVI and II, respectively, of the Social

20   Security Act ("Act").  For the reasons that follow, Plaintiff's Motion for Summary Judgment is

21   granted in part, the Commissioner's Cross Motion for Summary Judgment is denied, and this

22   matter is remanded to the ALJ for further findings as directed in this opinion.  The Clerk is

23   directed to enter judgment for plaintiff.

24   BACKGROUND

25              Plaintiff, born September 2, 1955, applied on May 9, 2007 for disability benefits.

26   (Tr. at 102, 104.)  Plaintiff alleged she was unable to work due to chronic pulmonary

                                              1

insufficiency (COPD), arthritis, bad headaches, peptic ulcer bleeding, and depression.  (Tr. at 68, 79, 86, 11.)  In a decision dated June 22, 2009, ALJ Mark C. Ramsey determined that plaintiff was not disabled.  (Id. at 9-20.)  The ALJ made the following findings:[1]

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since January 10, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.)*.
>
> 3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD), peptic ulcer bleeding and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P,

_____

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of unskilled light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand/walk 6 hours in an 8-hours day; sit for 6 hours in an 8 hour day with no work around extreme cold, hot, vibration, fumes, odors, dusts, gases and poor ventilation. However, the claimant would require limited contact with others.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.   The claimant was born on September 2, 1955 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age. (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from January 10, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. at 11-20.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A.  Whether the ALJ Erred in Rejecting the Opinions of the Examining Psychologist Without a Legitimate Basis; B.  Whether the ALJ Failed to Reference Third Party Testimony; and C.  Whether the ALJ Erred in Utilizing the Grids and Failing to Secure the Testimony of a Vocational Expert.

1   LEGAL STANDARDS

2       The court reviews the Commissioner's decision to determine whether (1) it is

3 based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

4 the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

5 Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

6 Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

7 as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d

8 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ

9 is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

10 ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

11 "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

12 rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

13   ANALYSIS

14     A.  Whether the ALJ Erred in Rejecting the Opinions of the Examining Psychologist

15 Without a Legitimate Basis

16       Plaintiff contends that the ALJ erred in giving the opinion of examining

17 psychologist, Dr. Stearns, only some weight, while ignoring without discussion the remainder of

18 this opinion.

19       The weight given to medical opinions depends in part on whether they are

20 proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

21 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[2]  Ordinarily,

22

23    [2] The regulations differentiate between opinions from "acceptable medical sources" and
24 "other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed
psychologists are considered "acceptable medical sources," and social workers are considered
"other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status
25 when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific
regulations exist  for weighing opinions from "other sources."  Opinions from "other sources"
26 accordingly are given less weight than opinions from "acceptable medical sources."

1    more weight is given to the opinion of a treating professional, who has a greater opportunity to

2    know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

3    Cir. 1996).

4              To evaluate whether an ALJ properly rejected a medical opinion, in addition to

5    considering its source, the court considers whether (1) contradictory opinions are in the record;

6    and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of

7    a treating or examining medical professional only for *"clear and convincing"* reasons.  Lester ,

8    81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may

9    be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating

10   professional's opinion generally is accorded superior weight, if it is contradicted by a supported

11   examining professional's opinion (supported by different independent clinical findings), the ALJ

12   may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

13   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

14   weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir.

15   2001),[3] except that the ALJ in any event need not give it any weight if it is conclusory and

16   supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999)

17   (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes,

18   881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

19   insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

20             In regard to Dr. Stearns, the ALJ stated: "[i]n addition, the opinion of Kimberly

21   Stearns, Ph.D. a State agency psychologist is give[n] some weight based on Dr. Stearns['

22   opinion that the claimant despite having some mental limitations still retains the ability to

23   understand, remember and carry out simple one or two step tasks." (Tr. at 18.)  The ALJ utterly

24

25       [3]  The factors include: (1) length of the treatment relationship; (2) frequency of
     examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;
26   (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

failed to mention the remainder of this consultative opinion.  The report, dated July 31, 2007,

enumerated several additional limitations in plaintiff's functional ability as follows:

> 2.  There are marked deficits in ability to understand, remember
> and carry out detailed / complex job instructions.
> 3.  The ability to maintain attention / concentration and persistence
> / pace appears moderately to markedly impaired.
> 4.  The ability to withstand the stress and pressures associated with
> day-to-day work activity appears moderately impaired secondary to
> emotional limitations.
> 5.  There are moderate deficits in the claimant's ability to respond
> appropriately to usual work situations.
> 6.  The ability to relate and interact with co-workers, supervisors
> and the public appears moderately impaired secondary to emotional
> limitations.
> 7.  Due to substance abuse and cognitive limitations, this claimant
> does not appear capable of managing funds.  Therefore, a payee is
> recommended.

(Tr. at 254.)

The ALJ completely ignored these limitations without discussion; however, he did

refer to Dr. Stearns report in mentioning that plaintiff was capable and not dependent on others

for her personal needs, utterly failing to reference the report's advisory that plaintiff could not

manage her own funds.  (Id. at 13.)  The ALJ chose instead to rely on the opinion of non-

examining DDS Dr. Galluci, who in turn had relied on Dr. Stearns in completing his report, but

did so incorrectly.[4]  Dr. Galluci first noted that an RFC assessment was necessary, that the

medical disposition was based on affective disorders, mental retardation, and substance addiction

disorders.  (Id. at 263.)  He opined that most categories of functioning were either not

significantly limited, and that a few were moderately limited.  None were found to be markedly

limited.  (Id. at 277-78.)  This doctor also found plaintiff was limited to simple tasks.  (Id. at

279.)  His conclusion was that based on the grids, plaintiff could do the full range of unskilled

light work with limited contact with others.  (Id. at 14.)

Unskilled work includes the ability to understand, carry out and remember simple

---

[4]  Dr. Galluci's assessment correctly followed Dr. Stearns' opinion in one respect: that
plaintiff could "understand, remember and carry out simple one or two step tasks." (Id. at 18).

1   instructions.  SSR 85-15.  This ruling states:

2           The basic mental demands of competitive, remunerative, unskilled
        work include the abilities (on a sustained basis) to understand,
3       carry out, and remember simple instructions; to respond
        appropriately to supervision, coworkers, and usual work situations;
4       and to deal with changes in a routine work setting.  A substantial
        loss of ability to meet any of these basic work-related activities
5       would severely limit the potential occupational base.

6           Such jobs "ordinarily involve dealing primarily with objects, rather than with data

7   or people, and they generally provide substantial vocational opportunity for persons with solely

8   mental impairments who retain the capacity to meet the intellectual and emotional demands of

9   such jobs on a sustained basis."  Id.  Unskilled work involves little or no judgement to do simple

10  duties that can be learned on the job in a short period of time.  This is in contrast to semi-skilled

11  or skilled work which may require alertness, close attention, or coordination and dexterity to do

12  repetitive tasks quickly.  20 C.F.R. § 404.1568.  The ALJ's limitations correspond to plaintiff's

13  limitations in following simple instructions and little contact with others.

14          Plaintiff cites to Program Operations Manual System at DI 25020.010 for the

15  proposition that certain mental abilities are critical in performing unskilled work, including the

16  abilities to "understand, carry out, and remember simple instructions; make judgments that are

17  commensurate with the functions of unskilled work; respond appropriately to supervision,

18  coworkers and work situations; and deal with changes in a routine worksetting."  The Ninth

19  Circuit in Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) has held that moderate

20  limitations in these abilities are not sufficiently severe non-exertional limitations to warrant

21  departure from the grids.  Here, Dr. Stearns found that plaintiff was moderately impaired in most

22  functional areas, but that she was markedly limited in following detailed and complex

23  instructions, and moderately to markedly impaired in maintaining attention / concentration and

24  persistence /pace.  (Id. at 254.)  Therefore, according to Hoopai, the grids are not sufficient to

25  assess these two more severe limitations.  The marked impairment in following detailed and

26  complex instructions is irrelevant to the finding of unskilled work, however, as this type of work

7

1  does not require this ability.  The limitation in maintaining attention / concentration and

2  persistence /pace requires further analysis as it is not subsumed in the finding of unskilled light

3  work.

4        It is true that an ALJ may properly rely upon only selected portions of a medical

5  opinion while rejecting other parts.  See, e.g., Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir.

6  1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes

7  substantial evidence).  Nonetheless, the ALJ erred in relying on a non-examining DDS physician

8  who relied solely but only partly on the examining source that the ALJ is rejecting in part, not to

9  mention that the DDS physician's report constituted a check marked form.  See Lester, 81 F.3d at

10  831 (opinion of a non-examining professional, without other evidence, is insufficient to reject the

11  opinion of an examining professional); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983)

12  (expressing preference for individualized medical opinions over check-off reports).

13        Moreover, Dr. Gallucci, although relying only on Dr. Stearns, failed to properly

14  record some of those opinions from Dr. Stearns' report.  (Id. at 275.)  For example, Dr. Gallucci

15  found that plaintiff had "good comprehension and memory for simple instructions, with some

16  difficulty for detailed instructions," which were moderately limited.  (Id. at 277, 279.)  Dr.

17  Stearns concluded that plaintiff had the ability to follow simple instructions, but found that she

18  had "marked deficits" in following detailed instructions.  (Id. at 254.)  Dr. Gallucci related that

19  plaintiff had "adequate social functioning with limited interaction," and found that plaintiff was

20  not significantly limited in getting along with coworkers, while Dr. Stearns had found that

21  plaintiff's ability in this regard was "moderately impaired."  (Id. at 278-79, 254.)  Dr. Gallucci

22  reported that plaintiff was moderately limited in maintaining concentration and sustained

23  persistence, while Dr. Stearns specifically found that plaintiff was moderately to markedly

24  impaired in these areas.  (Id. at 277-78, 254.)

25        As there are no mental health treatment records, the ALJ is bound to rely on Dr.

26  Stearns' evaluation rather than the non-examining form of Dr. Gallucci.  Remand is required for

1   this reason.

2        B.  Lack of Substance Abuse Analysis

3            More important than the ALJ's improper reliance on a non-examining

4   psychologist, and determination that plaintiff could do the full range of light work, is the ALJ's

5   failure to properly analyze plaintiff's substance abuse which is abundant in the record.  This error

6   was not raised by the parties.  As a result, plaintiff's assertions of error will not be reached as

7   remand is necessary to correct the record.  There is significant evidence of drug use in the record,

8   requiring the case to be remanded for the ALJ to perform an appropriate analysis of whether

9   plaintiff's addiction is a contributing factor material to disability pursuant to 42 U.S.C. §

10  423(d)(2)(C).  See Bustamante v. Massanari, 262 F.3d 949 (9th Cir. 2001).

11           The law precludes benefits for disability where substance abuse is a material

12  contributing factor.  Contract with America Advancement Act, Pub.L. No. 104-121, 110 Stat.

13  847 (March 29, 1996), ( providing that an "individual shall not be considered to be disabled for

14  purposes of [benefits under Title II or XVI of the Act] if alcoholism or drug addiction would (but

15  for this subparagraph) be a contributing factor material to the Commissioner's determination that

16  the individual is disabled."); 42 U.S.C. §§ 423(d)(2)(C), 382c(a)(3)(J); see also Sousa v.

17  Callahan, 143 F.3d 1240, 1242 (9th Cir.1998).

18           The Ninth Circuit has clarified the procedure to be used in determining whether

19  alcoholism or drug addiction is a contributing factor material to disability.  Bustamante v.

20  Massanari, 262 F.3d 949 (9th Cir. 2001); see 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. §§

21  404.1535(a), 416.935(a).  In Bustamante, the ALJ determined at step two of the disability

22  evaluation that, absent substance abuse, Bustamante did not have a "severe" impairment.  The

23  circuit reversed, making clear that the ALJ should first determine pursuant to the five step

24  inquiry, whether, including drug addiction or alcoholism, an applicant is disabled.  Bustamante,

25  262 F. 3d at 953-55.  Only after finding an applicant disabled, does the ALJ determine whether

26  the applicant would still be disabled if he or she stopped using drugs or alcohol.  Id. at 954.

9

1  Bustamante remanded, "with instructions that the ALJ proceed with step three (and four and five,

2  if necessary) of the disability determination without attempting to separate out the impact of

3  Bustamante's alcohol abuse." Id. at 956.

4          Although Bustamante did not address the question, applying Bustamante through

5  the steps of the disability analysis appears to require the ALJ to engage in a ping pong analysis,

6  factoring substance abuse into the equation and then taking it out at each step.[5]  Apparently,

7  pursuant to Bustamante, in a substance abuse case an ALJ may need to consider each of steps 3,

8  4, and 5 twice – first with substance abuse factored in and then, if a finding of disability results,

9  with it taken out.[6]  The Commissioner will need to reassess plaintiff's case, and if necessary,

10  resubmit the question to a medical professional consistent with the proper analytical model.

11          Although plaintiff testified that she had been clean and sober since 1996, (id. at

12  41), the record is replete with questions as to whether plaintiff is stable enough to maintain this

13  sobriety.  For example, plaintiff further testified that she does not use marijuana now but last

14  used it a couple of months before the hearing.  (Id. at 42.)  She testified that she does not smoke

15  it "that often," but when she did smoke it a couple of months ago, she used it about three or four

16  times a day.  (Id.)  Plaintiff clarified that she quit the hard drugs (heroin, crack cocaine,

17  methamphetamine), and had smoked marijuana daily, several times a day, since 1996, except

18  during the times when she worked.  (Id. at 47-48.)  In the questioning, the ALJ referred to a

19

20          [5]  A simpler approach to the problem is the one rejected in Bustamante.  If a medical
    determination of the severity of disability, absent substance abuse, is made at step two of the
    disability equation, repeating the analysis at each step of the equation is unnecessary.  The court,
21  however, is bound by Bustamante.

22          [6]  For example, if a determination at step three that a listed impairment is met changes
    when substance abuse is factored out, the ALJ apparently is to continue to the fourth step, factor
23  the substance abuse back in, and ask whether the claimant can do his past work.  In severe
    substance abuse cases, the answer at step four often will be that the applicant can't do his past
24  work, in which case the ALJ next considers whether, absent substance abuse, the equation
    changes.  If the inquiry continues to the fifth step, the question is whether, including the
25  substance abuse, there is any other work in the national economy the applicant can do.  Assuming
    severe substance abuse, the answer again likely is to be that the applicant can't do any other
26  work.  However, the ALJ must again consider the final step, absent the substance abuse.

1  hospital note that plaintiff experienced chest pain which was possibly due to amphetamine use.

2  (Id. at 49.)  Plaintiff denied she used methamphetamine at this time, however.  (Id.)   During the

3  hearing, the medical record was found which did indicate that plaintiff was positive for

4  amphetamine in May, 2006.  (Id. at 50.)   Plaintiff denied that she used methamphetamine since

5  1996, but confirmed that she had taken medication for her allergies since that time.  (Id. at 59.)

6  The ALJ then stated that plaintiff's social history indicated that she used amphetamines about a

7  year earlier but plaintiff denied it.  (Id. at 60.)

8          Mercy San Juan Medical Center, dated May, 2006, indicates a urine drug screen

9  that was positive for amphetamines, THC, Benzodiazepine, Cocaine Metabolite, Opiates,

10  Barbiturates, PCP, and Tricyclic Antidepressants.  (Id. at 192.)  On April 10, 2007, a urine screen

11  was positive for marijuana.  (Id. at 172.)  In the July 31, 2007 evaluation report by Dr. Stearns,

12  she noted plaintiff's report that she had been "clean and sober" for ten years.  (Id. at 252.)  She

13  did acknowledge current and regular use of marijuana at that time.  (Id.)  She diagnosed, among

14  other things, polysubstance dependence, and found that "due to substance abuse and cognitive

15  limitations, this claimant does not appear capable of managing funds."  A payee was

16  recommended.  (Id. at 253-54.)   Furthermore, Dr. Stearns noted that plaintiff's weight had

17  dropped to 82 pounds a few months before this consultation.  (Id. at 251.)  At the consultation,

18  plaintiff appeared thin and malnourished, her hair was unkempt, and she wore worn clothing.

19  Her fingernails were dirty and she appeared older than her stated age.  (Id. at 252.)

20          The ALJ refers to plaintiff's past substance abuse, and her current regular use of

21  marijuana, as well as the drug screening in which amphetamines were found in her system in

22  2006, despite her statement that she had been clean for ten years.  Although the ALJ repeatedly

23  acknowledged plaintiff's current drug use, he appears to have considered these facts only in

24  discounting her credibility.  (Id. at 16-18.)  He failed to analyze the issue under Bustamante

25  where the record clearly required it.

26          Plaintiff's alleged impairments, COPD, depression, and peptic ulcer bleeding,

1    have a connection with drug usage.  The substance abuse disorder connection is obvious.  Even

2    with the COPD impairment, there is a causal connection between the drug usage and plaintiff's

3    COPD, i.e., because plaintiff used drugs she violated her COPD treatment regime.  The clear

4    implication from this argument, whether scientifically valid or not, is that if plaintiff had not

5    violated her treatment regime by using drugs, the severity of her COPD would be much

6    diminished.

7            This brings the court to the final issue – why raise this matter of preclusion of

8    benefits because of drug usage when the parties have not raised it, and fairly obviously,

9    purposefully not raised it.  The Commissioner is desirous of simply getting a favorable decision

10   affirmed – so why directly raise an issue which requires a remand.  Plaintiff, quite clearly, would

11   not want to raise an issue which could very well spell the end of her disability application.

12   However, where Congress has clearly spoken of its intent in this area, and mandated a preclusion

13   of disability benefits if a disabling impairment bears a connection with drug usage, the parties

14   should not be asking the court, in effect, to ignore this mandate.  There is no legitimate way the

15   undersigned can adjudicate this case in the face of a controlling statute which the parties desire

16   not to exist.

17           The court is by no means finding that plaintiff is disabled.  Indeed, this case points

18   out an all too frequent paucity of record evidence in adjudicating permanent, perhaps lifetime,

19   disability claims – an adjudication which results in not inconsequential awards of monetary

20   benefits.  Here plaintiff claims she cannot work in significant part based on the largely non-

21   objective affliction of depression.  She has *never* received, or apparently sought, treatment for

22   this problem.  Rather, the case is purported to be decided on an hour or two, one shot

23   examination of a clinical psychologist, who even states herself that her opinions are suspect due

24   to the lack of record evidence.  Tr. 253.  But even with this short exposure to plaintiff, the

25   psychologist recognized that plaintiff had an ongoing substance abuse problem, and her physical

26   appearance at the examination did nothing to contradict this impression.  Yet the parties, and the

12

1  ALJ ignore this reality.

2          In addition, plaintiff did not seek treatment for her physical ailments until May,

3  2006, even though she alleges disability since January 10, 2004.  (Id. at 14.)  She then obtained

4  no medical treatment until April, 2007.  (Id.)  Plaintiff has also determined not to contest the

5  ALJ's finding that she is not credible, and the record reflects inconsistencies in her drug use and

6  her statements that she has not used drugs in ten years and never "fell off the wagon."  (Id. at 16.)

7  Nevertheless, difficult as it is, the case must be remanded so that the ALJ can make a proper

8  Bustamante analysis, and apply the restrictions imposed by the only examining psychologist of

9  record, even if a vocational expert is required as a result.  If it turns out that even after additional

10  development, where an examining mental health specialist is asked to attempt to separate non-

11  substance abuse induced problems from those caused by drug taking, the record remains as

12  sparse as it is, a denial of benefits would be warranted simply because plaintiff has not, and

13  cannot, meet her burden of proof.  But it should not be based upon a manipulation of an

14  inadequate record.

15  CONCLUSION

16          For the reasons stated herein, IT IS ORDERED that: Plaintiff's Motion for

17  Summary Judgment is granted in part pursuant to Sentence Four of 42 U.S.C. § 405(g), the

18  Commissioner's Cross-Motion for Summary Judgment is denied, this matter is remanded for

19  further findings in accordance with this order, and the Clerk is directed to enter Judgment for

20  plaintiff.

21  DATED: 11/19/2010                              /s/ Gregory G. Hollows

22                                                        _____
                                                         GREGORY G. HOLLOWS
23  GGH/076                                              U.S. MAGISTRATE JUDGE
    Brown3125.ss.wpd
24

25

26